UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SCOOP REAL ESTATE, L.P.; et al., through their Court-Appointed Receiver, BURTON WIAND, ESQ., <br><br> Plaintiffs, <br><br> vs. <br><br> HOLLAND & KNIGHT LLP; SCOTT R. MACLEOD; AND JOHN DOE 1-10, <br><br> Defendants | ) ) ) ) ) **CASE NO. 8:09-cv-1992-T-17AEP** ) ) ) ) (Removed from Sarasota County ) Circuit Court, Case #2009-ca-014887) ) ) ) ) |

## RECEIVER'S OPPOSITION TO MOTION TO DISMISS

BURTON WIAND, in his capacity as the Court-appointed Receiver for the Plaintiffs (which are also identified in the Amended Complaint as "the Investment Funds"), opposes the Defendants' Motion to Dismiss (Dkt. 13) for the reasons set forth below.

This case, which asserts only Florida common-law causes of action, was filed in Florida state court. The parties are not diverse. In spite of these uncontroverted facts, the Defendants removed this case to federal court. Based on a patent lack of federal court jurisdiction, the Plaintiffs have filed a Motion to Remand (Dkt. 7), which remains pending. This Court should not rule on the Motion to Dismiss, but rather should immediately remand this matter back to Florida state court, which will then rule on the motion. However, even if this federal court considers the Defendants' dismissal arguments before remanding these state law claims back to a Florida court, this Court should still deny the Defendants' Motion to Dismiss.

## OVERVIEW OF OPPOSITION

This lawsuit arises out of substandard legal services the Defendants rendered in Florida to the Plaintiff Investment Funds. The Plaintiffs are six (6) investment funds that were clients of Holland & Knight LLP ("H & K"). The Plaintiff Investment Funds had no employees, but their investments were managed by Arthur Nadel and his solely-owned and controlled corporation, Scoop Management, Inc. (Amended Complaint, ¶¶22, 37 & 41). Nadel, Scoop Management, Inc. and other companies affiliated with Nadel were also represented by H & K. (Amended Complaint, ¶38). The Plaintiff Investment Funds allege H & K failed in its duty to independently render adequate legal services to them, and favored its other clients (Nadel, Scoop Management and his various affiliated entities) over the interests of the Plaintiff Investment Funds. (Amended Complaint at numerous paragraphs, including ¶¶85, 81 & 82). Damages resulted when Nadel, left unchecked and without legal safeguards in place, stole and/or improperly divested the assets of Plaintiff Investment Funds. (Amended Complaint at ¶89).

The Defendants assert that the Plaintiff Investment Funds cannot maintain this suit on a number of grounds: 1) they believe an *in pari delicto* defense is available; 2) they claim the Receiver lacks standing; 3) they argue that the Plaintiff Investment Funds are inseparable from Nadel; and, 4) they contend that the Plaintiff Investment Funds have not adequately alleged "the requisite facts for aiding and abetting liability." Those arguments all fail because:

- An *in pari delicto* defense is inapplicable. The Plaintiff Investment Funds are factually and legally separate from Nadel and Nadel's management company, Scoop Management.[1] Receivers assume possession of entities free and clear of an *in pari delicto* defense when a "rogue manager" like Nadel was involved.

---

[1] The Plaintiff Investment Fund named Scoop Real Estate, L.P., is separate and distinct from Scoop Management, Inc., Nadel's management entity. Scoop Real Estate is also separate and distinct from Scoop Capital, another Nadel entity mentioned in the Receiver Reports.

2

- The "adverse interest exception" to *in pari delicto* applies. Nadel acted adversely to the interests of the Plaintiff Investment Funds. Defendants' argument (Motion at 11-14) that Nadel and Neil and Chris Moody were "inseparable" from the Plaintiffs is unfounded and, at least as to H & K, involves a disputed issue of material fact, which requires discovery.[2]

- The Receiver has standing to act on behalf of the Plaintiff Investment Funds, and is not attempting to assert claims that belong to creditors or investors. The damages suffered by the Investment Funds are different from investment loss damages suffered by the investors, and include (but are not limited to) more than $97 million in bogus management and "finder fees" that were in effect stolen from the Plaintiff Investment Funds.

- The Defendants' Motion challenges the adequacy of the Plaintiffs' factual allegations only as to Counts III and IV, for Florida common law aiding and abetting. Those state law claims arise out of Nadel's fraud and breach(es) of fiduciary duty, and are adequately alleged. The Defendants make no direct facial attack on the adequacy of Counts I and II and their insistence that the entire case be dismissed "with prejudice" (Motion at 2) is inappropriate.

## CORRECTIONS AND CLARIFICATIONS OF DEFENDANTS' VERSION OF THIS DISPUTE'S "FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY"

The Defendants' Motion begins with references to the SEC's enforcement action against Nadel, and the separate class action filed against them by defrauded investors.[3] It is improper for the Court, at this motion to dismiss stage, to consider these matters outside of the four corners of the Amended Complaint (Dkt. 2). However, even if the Court is inclined to examine matters external to the Amended Complaint, that examination supports Plaintiffs' case.

The Defendants argue at p. 17 that if the Receiver's suit is "permitted" to proceed, it "will be duplicative of, and even inconsistent with, any independent action by the investors." This is

---

[2] The Defendants appear to assume as true various facts not pleaded. Such assumptions are improper. By way of example, the Defendants' assertions that Nadel was "inseparable" from the Moodys or the Investment Funds is refuted by the exhibits the Defendants have attached to their motion and those "facts" are, in fact, vigorously disputed. The Court is bound by the Plaintiffs' allegations at this point, and not the Defendants' contrary assertions.

[3] Sullivan et al. v. Holland & Knight et al., Case No. 8:09-cv-00531-T-17AEP (M.D. Fla.)

not true. The two cases involve different plaintiffs, different causes of action, and different damage theories. The Defendants have been sued by other investors in other cases, including a Florida state court case and an Oregon state court case.[4] Just as it would be inappropriate for the Plaintiffs to contend that the existence of these other lawsuits means that liability exists, it is wrong for the Defendants to argue that the class action case preempts the Investment Funds' case. Each suit should be evaluated on its own merits.[5]

The Defendants characterize the Plaintiff Investment Funds' conduct as "fraudulent and, indeed, criminal," and incorrectly summarize the "thrust of the Amended Complaint" as: the "Defendants failed to prevent a Ponzi scheme." (Motion at 1-2). The Defendants repeat this erroneous position at p. 24, where they baldly assert that: "the Funds themselves were the very perpetrators of the Ponzi scheme." This defensive recasting of the Complaint ignores the Investment Funds' actual allegations, and seeks to argue evidence that may be appropriate at trial, but not at the motion to dismiss stage.

Contrary to Defendants' contentions, ¶22 of the Amended Complaint states:

> The Investment Funds had no employees of their own, and the investment management functions of all of The Investment Funds was conducted by Scoop Management, a company owned and controlled by Arthur Nadel, and which had its offices in Sarasota, Florida.

The Amended Complaint further states at ¶36, "... each Investment Fund through its controlling general partner or managing member entered into an agreement with Scoop Management, which

---

[4] *See* Receiver's Notice of Pendency of Related Cases, Dkt. 12.

[5] Whether any case will ultimately prevail is entirely speculative, and premature speculation about double recovery is inappropriate. O'Halloran v. PriceWaterhouseCoopers, LLP, 969 So.2d 1039 (Fla. 2d DCA 2007). That court was "unconvinced that such a double recovery will necessarily result even if the . . . claim [wa]s successfully litigated. Furthermore [the Court saw] no reason that such a potential should prevent the [Plaintiffs] from choosing how they wish to pursue their claims." Id. at 1049. To the extent there is any damage overlap, damages recovered in one case may offset damages in the other.

was owned and controlled by Arthur Nadel, for the provision of investment advisory and investment management services to each Fund." Paragraph 41 alleges: "Nadel made all investment decisions through SCOOP MANAGEMENT, and these investment decisions and actual investment results were confidentially and secretly maintained by him." Paragraph 29 alleges: "Nadel's fraud, theft and diversion of The Investment Funds' assets was spearheaded by Nadel, using his company SCOOP MANAGEMENT, and was unknown to The Investment Funds until January, 2009."

The Defendants erroneously recast these allegations to claim that "the funds were the very perpetrators of the Ponzi scheme," which could not be further from the truth. The Plaintiff Investment Funds were not the engines of the fraud, nor did they participate in it. Rather, they were independent and separate entities owned by investors, and were victimized by Nadel's fraudulent scheme. The Defendants' attempt to recast these facts and the Amended Complaint's allegations in a manner that suits their defensive strategy must fail.[6] The Court is required to accept the Plaintiffs' allegations as true. This Court should deny the Motion to Dismiss and direct the Defendants to save their factual arguments for trial.

Key to the Defendants' strategy is an attempt to interject information outside of the Amended Complaint in an attempt to convince the Court that Nadel, Neil and Chris Moody, and the Plaintiff Investment Funds are all "interchangeable" for purposes of their *in pari delicto* defense. The Amended Complaint makes concrete allegations to the contrary, and those allegations must be accepted as true. The Plaintiffs allege that Nadel, a "rogue manager,"

---

[6] The Defendants suggest on page 14 of their motion that "equity" mandates dismissal because they "are not alleged to have derived profits from the Ponzi scheme." This is again untrue. The Receiver specifically alleged that the Defendants were paid hundreds of thousands of dollars for their defective legal services. (Amended Complaint at ¶84). The Defendants did in fact "profit" from the facts that give rise to the lawsuit, despite their assertion to the contrary. Whether the Defendants were also "investors" in the Nadel scheme is irrelevant, in any event.

"maintained a veil of secrecy" and his "investments decisions and actual investment results were confidentially and secretly maintained by him." (Amended Complaint at ¶¶39-41). The Receivership entities did not participate in Nadel's fraud, but rather, were victimized by Nadel. As alleged in the Amended Complaint at ¶¶50 – 51: "The Investment Funds were not fraudulently created in and of themselves. Nadel stole and improperly diverted money from The Investment Funds to the detriment of The Investment Funds." The Plaintiffs allege throughout the Amended Complaint that Nadel's actions would have been prevented, had H & K properly done its job.

The Defendants cite to the Receiver's Second and Third Interim Reports (Exh. 1 and 2 to their Motion) and assert: "According to Plaintiffs, the Moodys also participated in Nadel's fraud." (Motion at p. 3). Even if the Court is inclined to look beyond the Amended Complaint to those Receiver Reports, the Defendants' recitals are factually incorrect. If the Court examines the actual language of the Receiver's Reports, the Court will see that the Receiver repeatedly states that Nadel was the wrongdoing agent, even if the Moodys had fiduciary responsibilities arising out of their management activities. Specifically, the Receiver's Third Interim Report demonstrates that Nadel acted alone, and was not "interchangeable" with the Moodys:

- Nadel, alone, "was the Hedge Funds' principal investment advisor."[7]

- As alleged by the SEC in the enforcement action, "Nadel used the Investment Managers to defraud investors" and misappropriate investor funds.[8]

- "Nadel defrauded investors through his control of the Hedge Funds' advisors and/or managers, Scoop Capital and Scoop Management."[9]

---

[7] Receiver's Third Interim Report, Exh. 2 to Defendants' Motion, p. 2.

[8] Id.

[9] Id. at p. 7.

- "Investment returns and performance ... were based on grossly overstated performance numbers created by Nadel."[10]

- "*[W]hile the Hedge Funds' accounts experienced losses, all but one of Nadel's personal accounts and other accounts **maintained essentially for the benefit of Nadel and in the sole control of Nadel** ... experienced significant gains.*"[11]

Furthermore, only Nadel was indicted in the SEC's enforcement action.

Finally, the Defendants' Motion confuses the nature of the Plaintiff Investment Funds' allegations, which lead to the four Florida state common law causes of action asserted in the Amended Complaint. Nadel violated federal securities laws and is the subject of the SEC's enforcement action. The Investment Funds' case is not against Nadel, it is against the Defendants here, and it is based entirely on Florida state law claims.

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

### STANDARD GOVERNING THE COURT'S REVIEW

A motion to dismiss can be granted only if it is clear that no relief could be granted under any set of facts that could be proven consistent with a plaintiff's allegations, and all allegations are viewed in the light most favorable to the nonmoving party. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). As stated in Risley v. Nissan Motor Corp., USA, 254 F.3d 1296, 1299 (11th Cir. 2001): "In reaching a decision based on state substantive law, we are bound to decide the case the way it appears the state's highest court would." The Plaintiffs have sufficiently alleged their four Florida common law causes of action. The issues the Defendants raise in their Motion to Dismiss are without any true factual support, and are more aptly suited for presentation as

---

[10] Id. at 10.

[11] Id. at 14 (emphasis added).

affirmative defenses. Even if this Court were to reach the Defendants' factual arguments, the Plaintiff Investment Funds' Florida claims are adequately pleaded, and their allegations, read in the light most favorable to them, require denial of the Defendants' Motion.

I. **AN *IN PARI DELICTO* DEFENSE IS UNAVAILABLE ON THE FACTS ALLEGED HERE**

A. **The Plaintiff Investment Funds are Legally Separate From, and Should not be Confused with, Nadel.**

The Investment Funds were separate and distinct from Nadel and Nadel's management entity, Scoop Management, which Nadel used to loot the Investment Funds. Nadel (acting alone or through Scoop Management) stole assets properly held by the Plaintiff Investment Funds. The distinction between the innocent Investment Funds and Nadel (and Nadel and the Moodys) is clearly alleged, as reiterated in the Receiver's Reports that the Defendants believe are germane to their motion. The fact is, the Defendants, acting as attorneys for the Investment Funds as well as for Nadel and Scoop Management, ignored multiple conflicts of interests and committed legal malpractice, all of which led to losses by H & K's clients, the Plaintiff Investment Funds.

B. **Nadel's wrongdoing is not imputed to the Investment Funds.**

According to the Defendants (Motion at 7-9), "all of the claims are barred by the *in pari delicto* and related imputation principles." Curiously, the first case the Defendants cite for this proposition is O'Halloran v. PriceWaterhouseCoopers LLP, 969 So.2d 1039 (Fla. 2d DCA 2007). In O'Halloran, which involved a bankruptcy trustee, the defendants' motion to dismiss was granted by a trial court, but that dismissal was reversed on appeal. The same result is required in this case.[12]

---

[12] Receivers, unlike bankruptcy trustees, are not subject to *in pari delicto* defenses, and courts have made a distinction between them. A bankruptcy trustee's rights are "strictly limited to those that existed when the bankruptcy commences," *see eg.*, Fine v. Sovereign Bank, 634 F.S.2d 127, 140 (D. Mass. 2008); in contrast, a

O'Halloran actually favors the Plaintiffs' position. The appellate court first noted that: "Where the defense of *in pari delicto* is asserted against a corporate entity based on the misconduct of the corporation's agents, it must be determined whether the misconduct of those agents is properly imputed to the corporation." Id. at 1044. This is, of course, a factual inquiry. Furthermore, based on O'Halloran's summary of the law, the Defendants' Motion fails, for two reasons.

First, whether the conduct of others was also wrongful (despite Nadel's alleged solo, "rogue manager" status) and could be imputed to the Investment Funds is a fact-driven determination that is inappropriate on a motion to dismiss. That issue requires investigation and discovery and cannot be resolved where the Court is bound to accept the Plaintiff Investment Funds' allegations as true.

Second, the Amended Complaint alleges that "Nadel maintained a veil of secrecy over the investment activities of himself and Scoop Management" and that "Nadel's fraud, theft and diversion of the Investment Funds' assets was spearheaded by Nadel using his company Scoop Management and was unknown to the Investment Funds until January 2009." (Amended Complaint at ¶¶40 and 29). Nadel was a "rogue manager who improperly diverted money from the investment funds," and all investment decisions were "confidentially and secretly maintained by" Nadel. Id. at ¶¶39; 41. Even if the Moodys were somehow tainted, which is a disputed issue of material fact inappropriate for resolution here. The Defendants' *in pari delicto* defense also fails because of the existence of innocent stockholders.

The Court is required to take these allegations as true. O'Halloran holds that if a corporate agent (here, Nadel) acts adversely to corporate interests, "the knowledge and

---

receiver is "cleansed" through his appointment and a court should consider "the effective divestment of the wrongdoer from any stake in the recovery–events that may alter the *in pari delicto* calculus." Id.

misconduct of the agent are not imputed to the corporation." Id. at 1045. A claim of "adverse interest" can only be invoked "where there is no innocent member of management who could act to thwart the wrongdoing." O'Halloran at 1045. Nadel's conduct, due to his secrecy and self-dealing, cannot be imputed to the Investment Funds, which had no employees of their own. (Amended Complaint at ¶22). In addition, the Middle District of Florida, in cases including In re Wiand Receivership Cases, 2007 WL 963165, *6 (M.D. Fla. 2007), has recognized that the *in pari delicto* defense "loses its sting" in an action brought by a receiver because the entity is thus "cleansed" through the appointment. The Middle District in In re Wiand Receivership Cases explained that under Florida law, a receiver may pursue independent tort claims where there is either an honest board member **"or an innocent stockholder."** Id. at *7 (emphasis added). This same Receiver, in In re Wiand, was found to have standing to the extent the receivership entities were injured by a diversion of their assets, though the Receiver could not, admittedly, assert investor claims. The motion to dismiss was denied under an *in pari delicto* analysis. Id. at *7.[13]

Here, the Plaintiff Investment Funds had not just one, but hundreds of innocent stockholders. The Defendants' Motion ignores the law that the existence of even a single innocent shareholder can defeat an *in pari delicto* defense. According to the Receiver's Third Interim Report at pp. 11-12, approximately 317 investors have approximately $168 million in out-of-pocket losses. Those innocent stockholders are also suing the Defendants in the class case the Defendants referred to in the first part of their Motion. It is illogical for the Defendants to argue that the Receiver lacks standing to sue for investors, but that the Receiver's case must be dismissed since the investors (who the Receiver cannot even represent) have separately sued.

---

[13] In a subsequent opinion in this same case, Judge Whittemore held that the Receiver's claims could go forward, and again denied a multi-pronged motion to dismiss. 2008 WL 818504 (M.D. Fla. 2008).

H & K may ultimately have liability both to the stockholders in the class case, and to the Investment Funds in this case, with different damages.[14]

O'Halloran and In re Wiand dictate denial of the motion to dismiss, and the Defendants' other *in pari delicto* citations are inapplicable or distinguishable. Hall v. Hall, 112 So. 622 (Fla. 1927) was an action to set aside a divorce decree. Kulla v. E.F. Hutton, 426 So.2d 1055 (Fla. 3d DCA 1983), like O'Halloran, reversed a trial court's dismissal and reinstated the suit where the investor (not receiver) did not act *in pari delicto* with the broker. Seidman & Seidman v. Gee, 625 So.2d 1 (Fla. 3d DCA 1992), citing FDIC v. Ernst & Young, 967 F.2d 166 (4th Cir. 1992) recognized no imputation exists where an agent or individual acts adversely to the corporation, as was the case with Nadel.[15]

### C. The Receiver for the Investment Funds is not subject to an *in pari delicto* defense under Florida law as applied in this jurisdiction.

In addition to O'Halloran, the Defendants cite Freeman et al. v. Dean Witter Reynolds, Inc., 865 So.2d 543, 550 (Fla. 2d DCA 2003) in support of an extended but unsubstantiated factual argument entitled "Nadel and the Moodys Are Inseparable from the Plaintiffs." (Motion at 11-14). First of all, this is again factual assertion that is inappropriate for a motion to dismiss. Second, no such allegation appears in the Amended Complaint, which on the contrary alleges that Nadel acted alone and for his own benefit. Third, Freeman supports the Receiver's right to bring these Florida causes of action on behalf of the Investment Funds. Fourth, the Receiver's

---

[14] The investors in the class case will seek to recover their investment losses, minus distributions taken, if any. The Investment Funds in this case will seek damages including money looted from the entities, improper bonuses, unjust enrichment these Defendants obtained for their defective services, etc.

[15] The Defendants' separate citations to Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1999), merely cite back to the Seidman case and do not invoke any new or original analysis. The Defendants' citation to bankruptcy trustee cases on p. 9 is of no significance because, as explained in this Opposition, trustees are not akin to receivers. Fine, *supra*.

Reports (even if considered by this Court) do not claim that the Moodys acted in concert with Nadel to loot the Investment Funds (or defraud investors). On the contrary, they portray Nadel as the sole culprit.

<p style="padding-left: 2em;">Freeman explained the *in pari delicto* defense as follows:</p>

> Although a receiver receives his or her claims from the entities in receivership, a receiver does not always inherit the sins of his predecessors. Under certain circumstances, defenses such as unclean hands do not apply against a receiver when they would have applied against the entity that was placed into receivership.

865 So.2d at 550. Freeman then explained, referring to Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995):

> We are inclined to believe that the receiver may also pursue certain claims that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership.

865 So.2d at 550.[16] Scholes in turn explained that a corporation that is a mere "robotic tool" or "evil zombie" of the wrongdoing principal is "freed from its spell" once the receiver takes over, and can then sue to recover its losses. 56 F.3d at 764. The Investment Funds have similarly been "freed" from Nadel and can sue these Defendants.

Freeman carefully distinguished between two kinds of situations, one which allows claims against third parties, and one that does not:

> The distinction between **an honest corporation with rogue employees**, which **can pursue claims for the fraud or intentional torts of third parties while in receivership**, and a sham corporation created as the centerpiece of a Ponzi scheme, which cannot pursue such claims, is both a legal and a practical distinction.

---

[16] The Defendants cite to Scholes on pages 16-17 of their Motion for the proposition that a receiver cannot assert investor claims. That is not the situation here, where the Plaintiff Investment Funds arise from damages H & K inflicted on them.

865 So.2d at 552.[17] The Plaintiff Investment Funds' claims fall in the first category: i.e., Nadel was a rogue contracted manager (not even an employee). The Investment Funds were not, themselves, fraudulent. Rather, they were the victims of the fraud.

The Defendants' suggestion (Motion at 4; 10-11) that the Investment Funds were "actually profitable" from 2003 through 2005 to the tune of $27 million, and that "Nadel's conduct benefited the funds," is a gross distortion of the actual facts. If the Court examines the Receiver's Third Interim Report at p. 9, the Court will see that from 2003 through 2008, Nadel "significantly overstated" the performance of the hedge funds. While the Defendants assert that the funds "earned" $27 million from 2003-2005, the Defendants ignore the critical reported fact (Third Interim Report, p. 9, Table 1) that for the exact same time period, Nadel falsely represented earnings of over $131 million.[18] It is strange that the Defendants consider $100 million in fraudulently reported earnings to be a "benefit" to the Plaintiff Investment Funds, from which Nadel stole money.

## II. EVEN IF AN *IN PARI DELICTO* DEFENSE EXISTED, THE "ADVERSE INTEREST EXCEPTION" APPLIES

The "adverse interest exception," set forth in O'Halloran v. PriceWaterhouseCoopers LLP, 969 So.2d 1039 (Fla. 2d DCA 2007), limits the applicability of the *in pari delicto* defense, even when that defense otherwise exists. That defense is inapplicable in this case because Nadel

---

[17] Emphasis added. A dismissal was granted in Freeman, where the receiver tried to sue on behalf of creditors, but there, the receiver's ability to sue was "not affected so much by the doctrine of *in pari delicto* as it is by the factual history of the Ponzi scheme." 865 So.2d at 550. The Receiver in this case asserts no creditor claims. Furthermore, one of the defendants in Freeman was Dean Witter, which was not a fiduciary: here, H & K was a fiduciary to (and owed duties to) the Plaintiff Investment Funds. Where routine banking functions are involved, the law does not allow a debtor/creditor relationship to be transferred into a fiduciary relationship. Id. at 549.

[18] It may in fact turn out, in discovery, that the supposed "profits" accruing during that time period were actually funded through investor money, and not the result of legitimate gains, but this inquiry, yet again, requires discovery, and cannot be the subject of a motion to dismiss.

was a rogue contracted manager, and there was no wrongdoing by the Plaintiff Investment Funds, let alone its innocent investors.

When a corporate agent engages in misconduct that is calculated to benefit the agent and to harm the corporation, the agent has effectively ceased to function within the course and scope of the agency relationship with the corporation. Although formally he acts as agent of the corporation, in reality he has forsaken the corporation and acts as an agent for himself. O'Halloran, supra at 1045.[19]

The Complaint repeatedly articulates that Nadel was a "rogue manager" operating clandestinely. Those allegations clearly establish the adverse interest exception with respect to the Plaintiff Investment Funds. The Defendants' Motion challenges allegations that Nadel conducted his fraud under a veil of secrecy, and the Defendants state (without any evidence) that the Investment Funds (which had no employees) "criminally" participated with Nadel or should have known of Nadel's fraudulent conduct. These assertions are, in a best case scenario for the Defendants, still disputed material facts, and are not appropriate for resolution at the motion to dismiss stage of a lawsuit.

The very fact that Nadel operated with a veil of secrecy stems from a lack of checks and balances, a situation the Defendants allowed to occur because they failed to independently represent the Investment Funds because of the pervasive conflicts of interest existing between Nadel, his management entity, and the Investment Funds themselves.

---

[19] *See also*, Scholes v. Lehmann, 56 F.3d 750 at 754-55 (the defense of *in pari delicto* "loses its sting" when the person who is *in pari delicto* is eliminated); Quiling v. Trade Partners, Inc., 2006 WL 897093, *1-2 (W.D. Mich. 2006) (*in pari delicto* does not bar receiver's claims); Fed. Deposit Ins. Corp. v. Melveny Myers, 61 F.3d 17, 19-20 (9th Cir. 1995) (defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver); Marion v. TDL Inc. 2004 WL 1175740, *3 (E.D. Pa. May 27, 2004) (*in pari delicto* does not bar receiver's claims, even when receivership entity was owned and controlled by the wrongdoer and used to perpetrate a Ponzi scheme).

14

### III. THE RECEIVER HAS STANDING TO PURSUE CLAIMS FOR THE INVESTMENT FUNDS

The Defendants' insistence that the Receiver is trying to recover investor losses (Motion at 15 - 17) misapprehends the nature of this lawsuit and ignores a body of case law holding that receivers do, in fact, have standing to pursue claims. The analysis as to whether the Receiver has standing to sue for the Investment Funds is set forth in Judge Whittemore's decision in In re Wiand Receivership Cases, 2007 WL 963165 (M.D. Fla. 2007) at *2:

> To meet the constitutional requirements for standing, a plaintiff must show that: 1) it suffered or is immediately likely to suffer injury in fact; 2) a causal connection exists between the injury and the alleged conduct; and 3) there is a likelihood that a favorable judicial decision will redress the injury.

Each of the Plaintiffs' four Florida common law causes of action alleges causation and damages to the Investment Funds from the Defendants' misconduct. (Amended Complaint at ¶¶94; 100; 110; 120). The first two requirements for standing are thus satisfied. As to the third element, it is clear that a favorable decision will redress the injury.

The case the Defendants cite to challenge standing involved a situation where the plaintiff entity was a principal culprit in the Ponzi scheme, and is factually distinguishable. *See* O'Halloran v. First Union Nat'l Bank, 350 F.3d 1197 (11th Cir. 2003). E.F. Hutton v. Hadley, 901 F.2d 979 (11th Cir. 1990) is also distinguishable, because there, the bankruptcy trustee was attempting to assert creditor claims. The Receiver is not suing on behalf of either creditors or investors. In fact, the investor claims are raised in the *Sullivan* class action, not replicated here, and the class action is further distinguishable from this case because those investors (unlike the Investment Funds) had no attorney-client relationship with the Defendants.

The suggestion that defending multiple cases may subject the Defendants to a duplicative judgment or double recovery is incorrect and, in any event, premature. *See eg,* O'Halloran v. PriceWaterhouseCoopers, LLP, 969 So.2d 1039, 1049 (Fla. 2d DCA 2007). Finally, the Defendants' standing challenge is merely a rehash of their *in pari delicto d*efense, and it fails to acknowledge, let alone apply, the applicable analysis for receivership standing as set forth by Judge Whittemore in other litigation involving this same Receiver in this same jurisdiction.

### IV. THE PLAINTIFF INVESTMENT FUNDS HAVE ADEQUATELY PLEADED THEIR AIDING AND ABETTING CLAIMS, COUNTS III AND IV

For whatever reason, the Defendants have made no direct attack on the adequacy of the pleadings as to Counts I and II, which are for breach of fiduciary duty, and negligence/professional malpractice. The Defendants have elected, instead, to mount a challenge to aiding and abetting fraud (Count III), and aiding and abetting breach of fiduciary duty (Count IV). For this reason, their "Conclusion" section, which seeks dismissal of Counts I, II, III and IV, with prejudice, is perplexing.[20]

The Defendants' arguments regarding these aiding and abetting claims are largely factual in nature. A motion to dismiss, as a matter of law, considers only the legal sufficiency of the allegations. What the Defendants fail to address (and perhaps misapprehend) is that the underlying fraud and fiduciary duty issue in Counts III and IV involves Nadel's conduct, which the Defendants allowed to occur by turning a blind eye while purportedly representing the Plaintiff Investment Funds. The Plaintiffs do not allege, in Counts III and IV, that the Defendants' own fraud or fiduciary duty give rise to those causes of action. Instead, the

---

[20] Perhaps the Defendants believe that their *in pari delicto* arguments apply to all counts. The Motion is unclear, but if this is the case, their Motion fails on all counts, including Counts III and IV.

Defendants' fiduciary duty lapses are the subject of Counts I and II (a breach of fiduciary duty is also an element of legal malpractice).

The Complaint sufficiently alleges that the Plaintiffs are entitled to relief on these Florida common law aiding and abetting counts. The elements, as outlined on p. 18 of Defendants' Motion to Dismiss are: (1) commission of a fraud or breach of fiduciary duty by another; (2) general awareness that the aider and abettor's role was part of an overall improper activity; and (3) knowing and substantial assistance of the violations.

As to this first element, the Plaintiff Investment Funds allege that Nadel, a rogue manager, spearheaded a fraud and improperly stole and diverted assets to himself and for his own benefit. (Amended Complaint at ¶¶29; 39; 52). As to the second element of an aiding and abetting cause of action, the Plaintiffs have alleged that the Defendants knew or should have known of (but failed to disclose) a lack of checks or balances (giving Nadel unfettered control of the entities' assets); irreconcilable conflicts of interest that the Defendants did not correct; Nadel's disbarment; misrepresentation of the entities' purported CPA, Michael Zucker; Nadel's illegal and improper kickbacks to an individual named Donald Rowe, including a settlement brokered in secret by the Defendants. *See* Amended Complaint at ¶¶46; 56-57; 59; 73; and 79-82.

The third and final element of these causes of action, knowing and substantial assistance of Nadel's violations, has been adequately pleaded as well. The Plaintiffs have specifically alleged that H & K allowed Nadel to be placed in a position of trust from which he perpetrated a massive fraud; that in addition to their knowledge of Nadel's problems and the secret Rowe settlement, and that when the Defendants modified disclosure documents regarding Zucker's accountant status, they took no action to investigate; and that they continually ignored their

obligations and rendered legal advice that assisted Nadel in the perpetration of his fraudulent scheme. (Amended Complaint at ¶¶64; 76; 80; 105; 115).

It is strange that the Defendants challenge the legal sufficiency of these three pleading elements because, on pp. 4-6 of their Motion, the Defendants *acknowledge* that the following facts are alleged: a lack of their oversight resulted in Nadel's issuance of false statements; they themselves created the faulty documents; they had actual knowledge of Zucker's CPA status (or lack thereof) but failed to investigate further; ignored public information about Nadel's disbarment; and ***"received information that the Funds were being illegally sold and marketed and that selling compensation was illegally paid to Donald Rowe and/or entities owned and controlled by him."*** (Motion at 4-6, citing Amended Complaint at ¶¶67; 27; 82(e); 76; 78; 79).

On page 24, the Defendants make a cursory argument that "allegations relating to a purported conflict of interest cannot provide the basis for a claim." This is a strange position to take because the Plaintiffs have made no such claim that a conflict alone states a cause of action. Rather, the Plaintiff Investment Funds' claims are grounded in malpractice by virtue of the Defendants' duty and breach of duty causally leading to damages. The conflict arising from Defendants' employment by Nadel, Scoop Management, and the Plaintiff Investment Funds is an operative fact pleaded to support the claim. Conflicts of interest alone are not causes of action: they are operative material facts that should be, and were, pleaded by the Plaintiff Investment Funds. Those conflicts of interest lay the framework for the existence of duties (and resulting breaches). Those allegations about conflicts of interest, while not creating causes of action in and of themselves, are important facts at the core of the Defendants' breach(es) of fiduciary duty.

When the Court takes these allegations as true, and makes all reasonable inferences in favor of the Plaintiffs, as it must do at this stage, the Court must allow Counts III and IV (and also Counts I and II, which are not directly attacked in the motion) to stand.

## CONCLUSION

This action should not even be pending before this Court, and it should be remanded. Even if the Court considers the Motion to Dismiss, it should be denied for the reasons set forth above, after which this case should be remanded to State Court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2009, a copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Richard H. Critchlow, Esq.
rcritchlow@kennynachwalter.com
Stanley Wakshlag, Esq.
swakshlag@kennynachwalter.com
Harry Schafer, Esq.
hschafer@kennynachwalter.com
Elizabeth Honkonen, Esq.
ebh@kennynachwalter.com
Ismael Diaz, Esq.
idiaz@kennynachwalter.com
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Blvd.
Miami, FL 33131

Michael Chapman, Esq.
michael.chapman@hklaw.com
Bradford Kimbro, Esq.
brad.kimbro@hklaw.com
Joseph Varner, Esq.
joe.varner@hklaw.com
Holland & Knight LLP
100 N. Tampa Street, Suite 4100
Tampa FL 33606

/s/ Guy M. Burns; /s/ Jonathan S. Coleman

Guy M. Burns
guyb@jpfirm.com
Florida Bar No. 0160901
Jonathan S. Coleman
jonathanc@jpfirm.com
Florida Bar No. 797480
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
P.O. Box 1100
Tampa, FL 33601-1100
Telephone: (813) 225-2500
Facsimile: (813) 223-7118
Counsel for Receiver

132048.4